**United States District Court**
For the Northern District of California

1

2

3

4

5               IN THE UNITED STATES DISTRICT COURT

6              FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8  MERRILL LYNCH CREDIT CORPORATION,     No. C -11-02857EDL

9        Plaintiff,             **REPORT AND RECOMMENDATION REGARDING PLAINTIFF'S MOTION**

10  v.                       **FOR DEFAULT JUDGMENT**

11  AFSHIN GOOYA,

12        Defendant.

13  _____/

14      On June 10, 2011, Plaintiff Merrill Lynch Credit Corporation filed a complaint against

15  Defendant Afshin Gooya, alleging state law claims for breach of contract, intentional

16  misrepresentation, negligent misrepresentation, unjust enrichment and conversion.  On June 23,

17  2011, Defendant was served with the summons and complaint in this matter.  See Docket No. 4.

18  Defendant failed to answer the complaint or otherwise defend the action.  On July 28, 2011, upon

19  Plaintiffs's request, the Clerk of this Court entered Defendant's default under Federal Rule of Civil

20  Procedure 55(a).  See Docket No. 6.  By his default, Defendant is deemed to have admitted the well-

21  pleaded averments of the complaint except those as to the amount of damages.  See Fed. R. Civ. P.

22  8(b)(6).

23      On October 21, 2011, Plaintiff filed a Motion for Default Judgment against Defendant.

24  Plaintiff seeks judgment against Defendant in the total amount of $380,472.82, which is comprised

25  of damages in the amount of $276,835.26, prejudgment interest in the amount of $89,971.46,

26  attorneys' fees in the amount of $12,122.50 and costs in the amount of $1,545.60.[1]  Although

27  Plaintiff has consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c), Defendant is in

28

---

[1]    The actual amounts sought by Plaintiff add up to $380,474.82, but since Plaintiff seeks $380,472.82, that is what the Court recommends.

default and has not consented.  The Court held a hearing on November 29, 2011.  There was no appearance for Defendant.  For the reasons stated at the hearing and set forth below, it is recommended that the court grant Plaintiff's motion and enter default judgment against Defendant in the amount of $380,472.82.  This matter will be reassigned to a district court judge.

**BACKGROUND**

On or about April 8, 2008, Defendant applied for a Home Equity Line of Credit from Plaintiff in the amount of $250,000 to be secured by Defendant's primary residence located at 24402 Overlake Lane, Lake Forest, California.  Compl. ¶ 5.  In the loan application, Defendant represented, among other things, that the property was owner-occupied and that there was one encumbrance against the property in favor of Washington Mutual Bank in the amount of $249,999.  Compl. ¶ 6.

Plaintiff ordered an appraisal performed on Defendant's property to ensure that there was sufficient equity to fully secure the line of credit up to the maximum of $250,000, as the line of credit would be in second lien position behind the first lien in favor of Washington Mutual.  Compl. ¶ 7.  The property appraised for $719,000.  Compl. ¶ 8.  Thus, Plaintiff determined that there was sufficient equity to secure the line of credit in second lien position.  Compl. ¶ 8.  Based on the representation by Defendant that the property was his primary residence and that there was only one existing lien on the property in the amount of $249,999, Plaintiff approved the line of credit.  Compl. ¶ 9.  On or about May 7, 2008, Plaintiff and Defendant entered into a line of credit agreement under which Plaintiff agreed to loan the money to Defendant, and Defendant agreed to repay the loan within twenty years at an initial annual percentage rate of 4.500%.  Compl. ¶ 10.

Along with the execution of the line of credit, Defendant executed a Borrower Agreement in which he confirmed, among other things, that the extent of encumbrances recorded against the property were disclosed to Plaintiff in the loan application.  Compl. ¶ 11.  The Borrower Agreement stated in pertinent part that the borrower understood that any intentional or negligent misrepresentation of the information in the Agreement could result in civil or criminal liability, and that the borrower had disclosed all liens against the property and is aware of no others.  Compl. ¶ 12.

On or about May 7, 2008, Defendant withdrew the entire $250,000 line of credit.  Compl. ¶ 13.  Plaintiff made monthly, written demands for payment to Defendant.  Compl. ¶ 14.  Defendant

1   never made a payment on the line of credit.  Compl. ¶ 15.

2       After Defendant's first payment default, Plaintiff learned that there was a first lien mortgage

3   in the amount of $453,000 held by Washington Mutual on the property and that the Washington

4   Mutual lien of $249,999 was a second lien mortgage.  Compl. ¶ 16.  Plaintiff's lien was in third

5   position and without adequate security to protect Plaintiff's interest in the line of credit.  Compl. ¶

6   16.

7       The Washington Mutual loans went into default and the property was sold at a Trustee's sale.

8   Compl. ¶ 17.  At that time, Plaintiff's lien was extinguished without compensation.  Compl. ¶ 17.

9       Had Defendant represented that $702,599 in liens secured by the property existed, Plaintiff

10  would not have approved and extended the line of credit.  Compl. ¶ 18.  As a result of Defendant's

11  failure to disclose the extent of liens on the property, and his failure to make a payment, Plaintiff has

12  been unable to recover any funds from the line of credit extended to Defendant.  Compl. ¶ 19.

13  **DISCUSSION**

14      A court may not enter a default judgment against an unrepresented minor, an incompetent

15  person, or a person in military service.  See Fed. R. Civ. P. 55(B)(2); 50 U.S.C. § 521(b)(1).

16  Defendant is not a minor, incompetent person, or in the military.  See Declaration of J. Allison

17  Tussey at ¶¶ 3, 4.

18      The general rule is that, upon default, the factual allegations of the complaint, except those

19  relating to the amount of damages, will be taken as true.  Televideo Systems, Inc. v. Heidenthal, 826

20  F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Financial Group, 559 F.2d

21  557, 560 (9th Cir. 1977)).  Necessary facts not contained in the pleadings, and claims which are

22  legally insufficient, however, are not established by default.  Cripps v. Life Ins. Co., 980 F.2d 1261,

23  1267 (9th Cir.1992).  Rule 55(b)(2) allows, but does not require, the court to conduct a hearing on

24  damages, as long as it ensures that there is an evidentiary basis for the damages awarded in the

25  default judgment.  Action S.A. v. Marc Rich & Co. Inc., 951 F.2d 504, 508 (2nd Cir. 1991).  Relief

26  is limited to the plaintiff's specific demand in his complaint.  Fed. R. Civ. P. 54(c).  Entry of default

27  judgment requires the consideration of several factors, including: (1) the possibility of prejudice to

28  the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4)

**United States District Court**
For the Northern District of California

3

the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  See Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Here, the Eitel factors weigh in favor of entry of default judgment.  Most significantly, Plaintiff's claims appear to have merit and the Complaint is sufficient to state a claim for the alleged violations of state law.   First, Plaintiff has stated a claim for breach of contract. "A cause of action for damages for breach of contract is comprised of the following elements: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." Careau & Co. v. Security Pac. Bus. Credit, Inc., 222 Cal. App. 3d 1371, 1388 (1990).  Here, as described in detail above, Plaintiff alleges that Plaintiff and Defendant entered into the line of credit and the Borrower Agreement, after which Plaintiff loaned Defendant $250,000.  Defendant breached the line of credit and the accompanying deed of trust by failing to make a payment after withdrawing the entire line of credit, and breached the Borrower Agreement by failing to disclose the full extent of encumbrances against the property.  As a result of Defendant's failure to disclose the full extent of encumbrances, a senior lienholder foreclosed, rendering Plaintiff unsecured and damaging Plaintiff in the amount of $276,835.26, exclusive of prejudgment interest, attorneys' fees and costs.  Webb Decl. ¶¶ 7-10; Ex. A.  Under California law, a creditor secured by a trust deed on real property must rely on the security before enforcing the underlying debt, but if the creditor becomes unsecured due to a loss in  the value of the security through no fault of the creditor, or due to a senior lienholder extinguishing the junior lienholder's security via foreclosure, the creditor may bring a personal action on the debt.  See Bank of Am. v. Graves, 51 Cal.App.4th 607, 611 (1996).

Second, Plaintiff has stated a claim for intentional misrepresentation.  "Under California law, the elements of fraud are: (1) a misrepresentation; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage." Osei v. GMAC Mortgage, 2010 U.S. Dist. LEXIS 61310, at *13 (E.D. Cal. June 18, 2010).  The line of credit required, among other things, adequate equity to secure its interest recorded against a residence in order to be approved and funded on

behalf of Plaintiff.  Declaration of Carol DeMarinis at ¶¶ 5, 6.  Defendant knew the extent of the

encumbrances against his property as it was his primary residence and the encumbrance he failed to

disclose was the purchase money mortgage he used to acquire the property approximately four years

earlier.  DeMarinis Decl. ¶ 4; Webb Decl. ¶¶ 5-6.  Plaintiff alleges in the complaint that Defendant

concealed his fraudulent conduct and the falsity of information from Plaintiff because he knew,

based on his elevated skill and expertise in real estate and lending, that Plaintiff would not approve a

loan if it knew that its loan was to be secured against the property in third position.  Compl. ¶ 31.

Plaintiff also alleges that Defendant concealed his intention to withdraw the entire line of credit

without making a single payment because he knew that Plaintiff would not approve a loan if it knew

its loan would not be repaid.  Compl. ¶ 32.  The information misrepresented by Defendant was

material because had Plaintiff known that the information was false, it would not have executed the

line of credit.  DeMarinis Decl. ¶ 12.  Plaintiff relied on Defendant's representations in the Borrower

Agreement, among other things, in approving and funding the line of credit.  DeMarinis Decl. ¶ 9.

Plaintiff states that as a result of Defendant's intentional misrepresentation, Plaintiff was damaged in

the amount of $276,835.26.  Webb Decl. ¶¶ 9-10.

        Third, Plaintiff has stated a claim for negligent misrepresentation.  "Negligent

misrepresentation is a form of deceit, the elements of which are (1) a misrepresentation of a past or

existing material fact; (2) without reasonable grounds for believing it to be true, (3) with intent to

induce the plaintiff's reliance, (4) ignorance of the truth and justifiable reliance by the plaintiff, and

(5) damages."  Garcia v. Ocwen Loan Servicing, 2010 U.S. Dist. LEXIS 45375, at *5 (N.D. Cal.

May 6, 2010).  Here, Defendant represented that he occupied the property as his primary residence.

DeMarinis Decl. ¶ 4.  Despite being the alleged homeowner, Defendant submitted untrue and

inaccurate information concerning the existence of the purchase money mortgage, without

reasonable grounds to believe that the information was true, to Plaintiff to obtain the line of credit.

Plaintiff alleges that he was unaware of the falsity of the information, and that it justifiably relied on

Defendant's representations.  Compl. ¶ 41.  Accordingly, Plaintiff states that it was damaged in the

amount of $276,835.26.  Webb Decl. ¶¶ 9-10.

**United States District Court**
For the Northern District of California

1    Fourth, Plaintiff has stated a claim for conversion.[2]  Under California law, the elements of

2    conversion are as follows: (1) ownership or right to possession of property; (2) wrongful

3    disposition of the property right of another; and (3) damages.  See Haro v. Ibarra, 180 Cal. App. 4th

4    823, 835 (2009).  Plaintiff is a lender that extends loans to creditworthy borrowers.  Compl. ¶ 1.

5    Defendant obtained the funds from the line of credit because he misrepresented to Plaintiff that he

6    intended to repay the debt.  Plaintiff demanded that Defendant return its money, but Defendant has

7    not done so.  Compl. ¶¶ 14, 15.

8         The remaining Eitel factors also weigh in favor of granting default judgment.  First, if the

9    motion were denied, Plaintiff would likely be without a remedy.  This is because if Defendant does

10   not appear in court, Plaintiff has no method of addressing this matter.  See Pepsico, Inc. v. Cal.

11   Security Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default

12   judgment is not granted, Plaintiffs will likely be without other recourse for recovery.").  Second,

13   because Defendant did not file an answer to the complaint, there is nothing to suggest that there is a

14   possibility of a dispute concerning material facts.  Third, the sum of money at stake in this action is

15   proportionate; the amount represents the total sum of the line of credit plus interest and expenses.

16   Finally, there is no evidence that Defendant's default was due to excusable neglect, particularly

17   because he is a licensed real estate salesperson.  Compl. ¶ 2.  Therefore, the Court recommends

18   granting Plaintiff's motion for default judgment.

19   **DAMAGES**

20       In Plaintiff's motion for default judgment, plaintiff seeks $276,835.26 in damages from

21   Defendant.  Plaintiff has the burden of proving damages through testimony or written declaration or

22   affidavit.  Plaintiff has submitted the declaration of Carol DeMarinis, the Loan Processor for PHH

23   Mortgage Services, originator and servicer for Bank of America, National Association, as successor

24   in interest by merger to Merrill Lynch Credit Corporation, and Jason Webb, the Home Equity Line

25   of Credit Default Manager for PHH Mortgage.  Ms. DeMarinis testified that Defendant approved

26   _____

27        [2]     Plaintiff also seeks judgment for its claim of unjust enrichment.  There is no claim for
     unjust enrichment in California, rather it is an equitable remedy.  See Melchior v. New Line
28   Productions, Inc., 106 Cal. App.4th 779, 793 (2003) ("In addition, as the trial court observed, there is
     no cause of action in California for unjust enrichment.").

United States District Court
For the Northern District of California

1   and funded the line of credit in the amount of $250,000.  DeMarinis Decl. ¶ 9.  Mr. Webb attested

2   that the total amount of interest due pursuant to the line of credit as of September 30, 2011 was

3   $25,477.67.  Webb Decl. ¶ 9.  Thus, the total loss suffered by Plaintiff as of September 30, 2011 was

4   $276,835.26.  Webb. Decl. ¶ 10; Ex. A.  Having reviewed the complaint, and all of the materials

5   filed in support of the motion for default judgment, the Court finds that Plaintiff has established that

6   Defendant is liable for this amount, and recommends that Plaintiff recover $276,835.26 from

7   Defendant.

8           Plaintiff also seeks payment of prejudgment interest in the amount of $89,971.46.  See

9   Declaration of J. Allison Tussey Concerning Prejudgment Interest ¶¶ 6-10.  The Borrower

10   Agreement does not set out a rate of interest in the event of a breach, but Plaintiff relies on

11   California Civil Code section 3289 to calculate monthly prejudgment interest of $2,306.96 based on

12   the principal amount of $276,835.26.  Id. at ¶¶ 5-6; Cal. Civil Code § 3289 (b) ("If a contract entered

13   into after January 1, 1986, does not stipulate a legal rate of interest, the obligation shall bear interest

14   at a rate of 10 percent per annum after a breach.").  There are thirty-nine months between the date of

15   default, July 1, 2008 and October 1, 2011, for a total prejudgment interest in the amount of

16   $89,971.46.  Tussey Decl. Concerning Prejudgment Interest ¶¶ 9-10.  The Court recommends

17   awarding Plaintiff $89,971.46 in prejudgment interest.

18           Plaintiff seeks attorneys' fees in the amount of $12,122.50 and costs in the amount of

19   $1,545.60.  Declaration of J. Allison Tussey at ¶ 10.  "In any action on a contract, where the contract

20   specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall

21   be awarded either to one of the parties or to the prevailing party, then the party who is determined to

22   be the party prevailing on the contract, whether he or she is the party specified in the contract or not,

23   shall be entitled to reasonable attorney's fees in addition to other costs."  Cal. Civ. Code § 1717.

24   The Deed of Trust reflecting the line of credit states that attorney's fees and costs may be awarded in

25   an action by the lender to enforce its rights under the deed of trust.  Tussey Decl. Ex. A at 4.

26   Plaintiff's request for fees and costs is reasonable and should be awarded.

27   **CONCLUSION**

28           For the reasons set forth above, and for good cause shown, it is hereby recommended that

default judgment be entered in the amount of $276,835.26 in damages, $89,971.46 in prejudgment interest, $12,122.50 in attorneys' fees, and $1,545.60 in costs.

Any party may serve and file specific written objections to this recommendation within ten (10) working days after being served with a copy.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Civil Local Rule 72-3.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.

Dated:  November 28, 2011

ELIZABETH D. LAPORTE
United States Magistrate Judge

**United States District Court**
For the Northern District of California